IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

KATHY FRASURE,⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀CASE NO. 1:09 CV 1765
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Petitioner,⠀⠀⠀)⠀⠀⠀JUDGE JOHN R. ADAMS
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀MAGISTRATE JUDGE
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀WILLIAM H. BAUGHMAN, JR.
OHIO REFORMATORY FOR WOMEN,⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀**REPORT & RECOMMENDATION**
⠀⠀⠀⠀⠀⠀⠀⠀Respondent.⠀⠀⠀)

## Introduction

Before me by referral[1] is the *pro se* petition of Kathy Frasure for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  The State of Ohio currently has Frasure incarcerated at the Ohio Reformatory for Women, serving an eight-year sentence.[3]  The Ashtabula County Court of Common Pleas imposed the sentence after her 2007 conviction, following her no contest plea to a single count of aggravated vehicular homicide.[4]

In her petition, Frasure raises the single claim for relief that the State violated her constitutional right to due process by allowing the vehicle she allegedly drove in the fatal accident to be destroyed before defense experts could examine it.[5]  The State, in turn, argues

---

[1] *See*, Local Civil Rule 72.2(b)(2).

[2] ECF # 1.

[3] *Id.* at 1.

[4] *Id.*

[5] *Id.* at 5.

that the Ohio appeals court properly rejected Frasure's claim.  It found, relying on the United States Supreme Court case of *Arizona v. Youngblood*,[6] that the destruction of the vehicle did not deny Frasure due process since the vehicle constituted only potentially useful, not exculpatory, evidence, and the State did not act in bad faith.[7]

For the reasons that follow, I will recommend the denial of Frasure's petition for habeas relief.

## Facts

### A.    Underlying facts

While the relevant facts underlying this petition are somewhat extensive, they are not disputed.  As noted by the Ohio court of appeals,[8] in March, 2005, a minivan driven by Frasure collided with a car making a left turn, killing a woman passenger in the turning car.[9] Emergency personnel arriving at the scene found Frasure's vehicle engulfed in flames.[10] Officers "detected a strong smell of alcohol on Ms. Frasure" and described her as "combative" toward them.[11]  An on-site investigation of the skid marks by the Ohio Highway

---

[6] *Arizona v. Youngblood*, 488 U.S. 51 (1988).

[7] ECF # 9.

[8] Facts found by the state appeals court on its review of the record are presumed correct by the federal habeas court.  28 U.S.C. § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[9] ECF # 9, Attachment (state court record) at 188-89 (appeals court opinion).

[10] *Id*. at 189.

[11] *Id*.

Patrol revealed that Frasure had been traveling at a high rate of speed at the time of the accident and concluded that Frasure would have had "ample time" to slow or stop for a car making a left turn if she had driven within the 45 mile per hour speed limit.[12]

Initially, the investigating troopers were unclear as to whether Frasure had been driving the van.[13]  But, (1) a statement by Frasure's ten-year old son, who was a passenger in the van; (2) a statement from a witness who had pulled Frasure from the driver's seat in the burning van; and (3) a statement by Fraser herself to a firefighter, all established Frasure as the driver of the van at the time of the accident.[14]

Immediately after the accident, Frasure went to the hospital, where a police officer described her as "belligerent with the odor of alcohol on her person."[15]  After failing to observe several warnings from this officer to refrain from causing a disturbance, Frasure was arrested for disorderly conduct.[16]  The hospital administered two blood tests for blood alcohol content, with the first test showing a blood alcohol content of 1.183 grams and the second, done an hour later, showing a blood alcohol content of 0.165.[17]  After completion of the blood tests, Frasure went to jail.[18]

---

[12] *Id.* at 189-90.

[13] *Id*. at 190.

[14] *Id*.

[15] *Id*. at 191.

[16] *Id.*

[17] *Id*.

[18] *Id.*

The two vehicles involved were taken to separate impound lots.[19]  Frasure's Pontiac minivan ended up at A.B.S. Towing, with instructions from the Highway Patrol to hold the vehicle pending investigation.[20]  After 30 days, with no response from Frasure following notification to her as to the vehicle's location, the owner of A.B.S. Towing contacted the Highway Patrol seeking further information as to what to do with the vehicle.[21]  The Highway Patrol responded that it was no longer needed, and A.B.S. could release it to its owner or otherwise dispose of it.[22]

Consequently, in April, 2005, A.B.S. Towing submitted an "Unclaimed Motor Vehicle Affidavit" to the Ohio Department of Motor Vehicles.[23]  In late May, the Ohio DMV identified Katie Corrigan, not Frasure, as the titled owner of the minivan.[24]

Based on that information, in June A.B.S. Towing sent a certified letter to Katie Corrigan informing her that the minivan was in the A.B.S. Towing impound lot.[25]  That letter was returned as unclaimed.[26]  Accordingly, in late June 2005 – or after nearly 90 days of

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* at 192.

[24] *Id.*

[25] *Id.*

[26] *Id.*

unsuccessfully working to release the minivan to its lawful owner – the unclaimed vehicle was finally released to and destroyed by a wrecking company.[27]

**B.     Pre-trial motions and trial**

In November, 2005, Frasure was indicted on two counts of aggravated vehicular homicide – one as a first degree felony and one as a second degree felony.[28]  Frasure, found indigent, entered pleas of not guilty to both counts and initially moved to suppress all evidence on the grounds that she had been unlawfully detained and the evidence against her had been obtained without her consent.[29]  She also filed a request for the appointment of an accident reconstruction expert.[30]  The court granted that in June, 2006[31] – or approximately one year after destruction of the vehicle she had driven in the accident.

Frasure filed a joint motion to dismiss and in limine.[32]  In the motion to dismiss, she argued that the State had failed to preserve materially exculpatory evidence when it permitted the van to be destroyed.[33]  In the motion in limine, Frasure contended that all evidence regarding the van's speed, its mechanical condition, and the identity of the driver should be

---

[27] *Id.*

[28] *Id*.

[29] *Id*.

[30] *Id.* at 192-93.

[31] *Id*. at 193.

[32] *Id.*

[33] *Id.*

excluded because the van, having been destroyed, was not available for inspection on these matters.[34]

The trial court initially conducted a hearing on the motion to suppress.[35]  It denied the motion on the grounds that officers had a reasonable, articulable basis for believing that Frasure had operated a vehicle while intoxicated, and so had probable cause for having blood drawn for a blood alcohol test.[36]  The trial court also found admissible the statement Frasure made to the EMT technician that she was the van's driver.[37]

Several months later, the court conducted a hearing on Frasure's motion to dismiss and motion in limine.[38]  At the hearing, the accident reconstruction expert retained by Frasure testified that he had been asked to determine (1) who had been driving the van, and (2) how fast was the van going.[39]  He testified that, shortly after his retention, he learned of the van's destruction and that he considered the vehicle material evidence.[40]

But, in response to the State's questions, he also testified that the fire that gutted the van after the accident likely destroyed any evidence in the van as to the identity of the

---

[34] *Id*.

[35] *Id*.

[36] *Id*.

[37] *Id.*

[38] *Id*. at 194.

[39] *Id*.

[40] *Id*.

driver.[41]  As to the issue of speed, he stated that the existing evidence of the skid marks on the pavement permitted him to be "comfortable" calculating the van's speed at impact; nevertheless, an inspection of the vehicle would have permitted him to analyze the angles of the vehicles at contact, the crush pattern, and the principal direction of force.[42]

Additional testimony at the hearing from officers of the Highway Patrol established Frasure's "erratic, reckless, careless, negligent or aggressive driving" as the "contributing circumstance[]" underlying the accident.[43]  Moreover, the Patrol's estimate of Frasure's speed at the time of impact was 94 miles per hour, based on an analysis of the skid marks.[44]

Different officers of the Patrol also testified at the hearing that:  (1) the van was photographed prior to being destroyed; (2) all applicable procedures for disposing of evidence were followed; and (3) Frasure herself was not notified that the van was to be destroyed because she was not the titled owner.[45]

---

[41] *Id.* at 195.

[42] *Id*.

[43] *Id.*

[44] *Id*.

[45] *Id.* at 196.

Following this hearing on the motion to dismiss and the motion in limine, the trial court overruled both motions.[46]  Frasure thereupon entered a no contest plea to the two counts of the indictment.[47]  The trial court sentenced Frasure to a term of eight years in prison.[48]

## C.    Direct appeal

Represented by the same counsel as in the trial court, Frasure timely filed a notice of appeal.[49]  The appeal was originally dismissed for want of prosecution[50] but then reinstated after the appeals court granted a motion for reconsideration.[51]  The reinstated appeal raised one assignment of error:

It was error for the court to overrule the defendant's motion to dismiss.[52]

The State filed a brief in response,[53] and the appeals court then affirmed the judgment of the trial court.[54]

---

[46] *Id*.

[47] *Id*.

[48] *Id.*

[49] *Id*. at 134 (notice of appeal filed March 26, 2007).

[50] *Id.* at 153.

[51] *Id.* at 154 (motion to reconsider); 159 (order granting motion to reconsider).

[52] *Id*. at 162.  The State notes that two prior appellate briefs were stricken from the record for failing to comply with court rules.  *See*, ECF # 9 at 8 n.2.

[53] ECF # 9, Attachment at 179.

[54] *Id*. at 188-210.

Essentially, the Ohio appeals court began its analysis by noting, under the *Youngblood* test, that, if the evidence destroyed was only potentially useful, and not materially exculpatory, a defendant must show bad faith by the State to establish a due process violation.[55]  In this case, the appeals court initially found that, because Frasure's own accident expert testified that no evidence relevant to the issue of who was driving the van likely remained after the fire, the destruction of the van involved only potentially useful evidence, not materially exculpatory evidence, of the identity of the driver.[56]  Similarly, as to the question of the van's speed, the court concluded that, because the defense expert was "comfortable" using data from the skid marks to establish speed on impact, the destruction of the van again involved merely potentially useful, not exculpatory, evidence as to vehicle speed.[57]

Having determined that the evidence involved was only potentially useful, the court then considered whether Frasure had proven that the State destroyed the van in bad faith.[58]  In that regard, the Ohio appellate court noted first that, because the van was destroyed before the filing of any criminal charges, it was questionable whether the Highway Patrol's policy on holding property pending criminal prosecution even applied to this case.[59]  Moreover, the

---

[55] *Id*. at 200.

[56] *Id*. at 203.

[57] *Id.*

[58] *Id.* at 203-04.

[59] *Id*. at 205-06.

court observed that no evidence existed that the destruction here was intended to aid any future prosecution or that the police knew that any prosecution was contemplated at the time of the vehicle's destruction.[60]  Ultimately, while the appeals court opinion recognized that the better course would be for police to hold evidence for a reasonable time where the future filing of criminal charges is likely, nevertheless, on these facts, the appeals court concluded the State did not act in bad faith here.[61]

Following the decision of the Ohio appeals court, Frasure – still represented by her same counsel – timely filed[62] a notice of appeal with the Supreme Court of Ohio.[63]  In her memorandum in support of jurisdiction, Frasure presented a single proposition of law:

> A defendant's right to due process as guaranteed by the Fifth and Fourteenth Amendments are violated when the State fails to preserve material evidence.[64]

The State filed a memorandum in response[65] and, on August 6, 2008, the Ohio Supreme Court thereupon declined jurisdiction, dismissing Frasure's appeal as not involving any substantial constitutional question.[66]  The record here does not show that Frasure sought a writ of certiorari from the United States Supreme Court.

---

[60] *Id.* at 207.

[61] *Id.* at 207-08.

[62] The notice of appeal was filed May 14, 2008, and the decision appealed from was entered on March 31, 2008.

[63] *Id.* at 212-13.

[64] *Id*. at 221.

[65] *Id*. at 265-75.

[66] *Id.* at 276.

-10-

### D.        Federal habeas petition

On July 12, 2009,[67] Frasure, *pro se*, filed the present petition for federal habeas relief[68]

raising the following ground for relief:

> Ground One:  A defendant's right to due process as guaranteed by the Fifth
> and Fourteenth Amendments.  Failure to preserve material evidence whether
> destroyed in bad faith or not.[69]

In her memorandum in support, Frasure explicitly urges this Court to adopt the views

of the dissent in her state appeal.[70]  Specifically, the dissent initially accepts the rule that, in

matters involving the destruction of only potentially useful evidence, no due process

violation occurs unless the State acted in bad faith.  However, the dissent here maintains that

bad faith for *Youngblood* purposes should exist if the State "adopts procedures regarding the

preservation of potentially useful evidence which make likely, or assure, the evidence will

be damaged or destroyed."[71]  The dissent concludes that, because existing Ohio Highway

Patrol policy permits the destruction of a vehicle involved in a fatal crash before the filing

of any criminal charges, such a policy should be found to be in violation of *Youngblood*

---

[67]  I note that Frasure submitted her petition for filing on July 12, but it was not
actually filed with the Court until July 24.  Because a *pro se* prisoner petition is deemed filed
on the date it is submitted to prison authorities for filing, Frasure's petition should be
considered filed on July12.  *See*, *Houston v. Lack*, 487 U.S. 266, 275-76 (1988).

[68]  ECF # 1.  The matter was originally filed in the Southern District of Ohio and
subsequently transferred to this Court.  *See*, ECF # 2.

[69]  ECF # 1 at 5.

[70]  ECF # 1, Attachment at 3.

[71]  ECF # 9, Attachment at 209 (citing *State v. Durnwald*, 163 Ohio App. 3d 361,
837 N.E.2d 1234 (Ohio Ct.  App. 2005)).

because it "make[s] likely" that potentially useful evidence will not be preserved until the time a person becomes a criminal defendant and is in need of such evidence.[72]

The State, in its return, argues that the Ohio appellate opinion correctly identified *Youngblood* as the controlling law and further was not unreasonable in applying *Youngblood* to find that no bad faith occurred here.[73]  In particular, the State contends that, while the Highway Patrol may have exercised "more prudence" to preserve the evidence at issue, the actions of the State in this case – even if negligent or grossly negligent – did not rise to the level of bad faith.[74]

Frasure filed a traverse basically restating the argument that, in light of the dissenting opinion in the appellate case, "the State [here] should not be allowed to adopt procedures tending to make the destruction of such evidence likely, [and] then contend the evidence was destroyed through negligence or happenstance [but not bad faith]."[75]

## Analysis

### A.    Preliminary observations

Before proceeding to an analysis of the merit's of Frasure's claim for relief, I make several preliminary observations.

---

[72] *Id*. at 209-10.

[73] ECF # 9.

[74] *Id*. at 23.

[75] ECF # 12 at 34.

Specifically, I note that:

- there is no dispute that Frasure is presently in the custody of the State of Ohio under the terms of a sentence pronounced by an Ohio court.[76]

- Frasure's petition was filed within one year of the conclusion of direct review of her conviction and sentence by Ohio courts[77] and so is timely.

- Frasure's single ground for relief has been exhausted in Ohio courts[78] and was not procedurally defaulted.[79]

Further, I also note that Frasure's motion for appointment of counsel in this matter[80] has been addressed and denied in a prior order.[81]  She has not requested an evidentiary hearing.[82]

Accordingly, I recommend finding that the prerequisites for review of a habeas petition by this Court have been met.

## B.    Standard of review

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute provides that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly

---

[76] 28 U.S.C. § 2254(a).

[77] 28 U.S.C. § 2254(d)(1).

[78] 28 U.S.C. § 2254(b),(c); *Rhines v. Weber*, 544 U.S. 269, 274 (2005).

[79] *Reed v. Farley*, 512 U.S. 339, 354-55 (1994).

[80] ECF # 11.

[81] ECF # 13.

[82] 28 U.S.C. § 2254(3)(2).

established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[83]

In applying that statute, the well-known teachings of *Williams v. Taylor* guide the federal habeas court.[84] As stated by the United States Supreme Court in *Williams,* a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[85] *Williams* further holds that a state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[86]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law

---

[83] 28 U.S.C. § 2254(d).

[84] *Williams v. Taylor*, 529 U.S. 362 (2000).

[85] *Id.* at 412.  *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[86] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

-14-

erroneously or incorrectly."[87]  Rather, the state court holding may be disturbed only upon showing that it was "objectively unreasonable."[88]

In addition, a state court may be found to have unreasonably applied clearly established federal law if it unreasonably extends or unreasonably fails to extend a clearly established federal legal principle to a new context.[89]

Finally, where a state court does not address the merits of a federal claim properly presented to it, "the deference due [a state court decision by the federal habeas court] under the AEDPA does not apply."[90]  Then, the federal court is to review the claim *de novo*.[91]

**C.    Application of standard – Frasure's petition should be denied because the state appeals court decision reasonably applied the clearly established federal law of *Youngblood* to this case.**

I note first that the United States Supreme Court decision in *Youngblood* sets out the clearly established federal law applicable to the claims raised here, and both Frasure[92] and the State concur on this matter.[93]  Most importantly, the Ohio appeals court recognized *Youngblood* as controlling in its decision.[94]

---

[87] *Williams*, 529 U.S. at 411.

[88] *Id*. at 409.

[89] *Id.* at 405-07.  *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

[90] *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[91] *Id.*

[92] *See*, ECF # 12 at 17, 33-34.

[93] ECF # 9 at 23.

[94] ECF # 9, Attachment at 200.

As stated earlier, *Youngblood* holds that the destruction of merely potentially useful evidence by the state does not constitute a due process violation unless that action was done in bad faith.[95]  Applying that test requires a predicate finding as to whether the evidence involved was material exculpatory evidence, in which case the good or bad faith of the state is irrelevant,[96] or whether the evidence was merely potentially useful.[97]  As understood by *Youngblood*, "potentially useful" evidence is distinguished from material exculpatory evidence in that potentially useful evidence is "evidentiary material of which no more can be said than that it could have been subjected to tests, the result of which *might* have exonerated the defendant."[98] Moreover, the burden is on the defendant to prove that the evidence was materially exculpatory, not potentially useful.[99]

In this case, in determining the predicate question as to the nature of the evidence destroyed, the Ohio appeals court found that the van was just "potentially useful" evidence. The court found first that, because, in the judgment of Frasure's own accident reconstruction expert, a fire caused by the collision had likely destroyed any evidence in the van going to

---

[95] *Youngblood*, 488 U.S. at 57-58.

[96] *Id.* at 57.

[97] *Id*. at 57-58.

[98] *Id*. at 57 (emphasis added).

[99] ECF # 9, Attachment at 203.

-16-

the question of the identity of the driver, the van was only potentially useful evidence on that issue and not materially exculpatory.[100]

Similarly, as to physical details of the collision, the court also found – again relying on the testimony of Frasure's own expert at the hearing – that vehicle speed at impact could be reliably determined from the skid marks on the pavement and so did not depend on testing the van.[101]  While agreeing with Frasure's expert that tests on the van "may have aided" the defense in doing an accident reconstruction, the court concluded that is was mere speculation as to whether such a reconstruction would have yielded any evidence that would have altered the result of the case.[102]

Accordingly, the Ohio court properly found under *Youngblood* that the van in this case was only potentially useful evidence, requiring that Frasure show the State acted in bad faith in destroying the van in order to prevail on her claim that due process was violated.[103]

The court then addressed the issue of bad faith.  Frasure had argued initially that bad faith exists because Highway Patrol policy was to retain custody of evidence until "'after prosecution and proper disposition of the case by the court.'"[104]  The appeals court disagreed, noting, with the trial court, that it was "questionable" as to whether this portion of the

---

[100] *Id*. at 202.

[101] *Id*.

[102] *Id*.  I note in this regard that the case here was never submitted to a jury since Frasure pled no contest to the charges.

[103] *Id*. at 203-04.

[104] *Id*. at 204 (quoting § 103.10 of the Ohio State Highway Patrol manual).

Highway Patrol policy manual even applied here given that the policy contemplates the existence of a criminal case, which was not the situation here, where the van was destroyed even before any criminal charges were filed.[105]  The court went on to note that there was no evidence that the Patrol did anything but follow normal procedure in investigating this crash and disposing of the van.[106]

In addition to the argument based on a purported violation of Highway Patrol policy, Frasure also maintained on appeal that the destruction of evidence here was analogous to that in two cases where bad faith was found.  In *State v. Durnwald*,[107] the appeals court found that the destruction by police cadets in training of a dashboard camera video of a field sobriety test was in bad faith. The court determined that leaving such a video in the police car under such circumstances where it was likely it might be accidentally erased was tantamount to bad faith.[108]  In *State v. Battease*,[109] the destruction by a single police officer of a dashboard camera video of a traffic stop was judged bad faith where the officer violated departmental regulations in making the unilateral determination that the video was no longer needed.[110]

_____

[105] *Id.* at 205.

[106] *Id.* at 205-06.

[107] *Durnwald*, 163 Ohio App. 3d 361, 837 N.E.2d 1234.

[108] ECF # 9, Attachment at 206 (citing *Durnwald*).

[109] *State v. Battease*, Nos. C-050837, C- 050838, 2006 WL 3690689 (Ohio Ct. App. 2006).

[110] ECF # 9, Attachment at 207 (citing *Battease*).

-18-

The appellate decision here found first that, unlike *Durnwald* and *Battease*, there were no criminal charges pending against Frasure at the time the evidence was destroyed.[111] Further, unlike *Battease*, there was no showing that the police here violated any rules or procedures.[112] Moreover, the appeals court noted that there was also no evidence that the van was destroyed for the purpose of aiding a criminal prosecution or even that police knew at the time the van was destroyed that Frasure was going to be charged with a crime.[113] Finally, the court observed that, because Frasure was not the titled owner of the van, the State could not be deemed to have acted in bad faith for not notifying her of the van's destruction when it attempted to give notice to the rightful owner in advance of the demolition.[114] On those grounds, the court determined that Frasure had not established bad faith.[115]

Frasure's objection seems to be that the Ohio appeals court should have found bad faith here because the State acted in a way that made likely the destruction of potentially useful evidence.[116]  As the dissent recognizes, there was no violation of written Highway Patrol policy here because no criminal case existed at the time the van was destroyed that

---

[111] *Id.*

[112] *Id.*

[113] *Id.*

[114] *Id.*

[115] *Id.*

[116] *See*, *id.* at 209.

would trigger the policy of preserving evidence until after the prosecution and completion of a case.[117]

Still, Frasure wants this Court to adopt a rule where a finding of bad faith in the *Youngblood* context does not require, as it does now, proof of a "dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another,"[118] but rather may be proven merely upon showing that the State resorted to a procedure that made it likely that potentially useful information would be destroyed.

Whatever may be the merits of that position as a non-constitutional rule of Ohio law applying such a departure from the rule in *Youngblood* here does not comport with the more limited function assigned to this Court by Congress in the AEDPA.  That function, as is well-known, is to grant relief only when the state court decision is an unreasonable application of clearly established federal law. Thus, in this case, I recommend finding, for the reasons stated, that the state appeals court decision was not an unreasonable application of *Youngblood*.

---

[117] *Id.*

[118] *Warner v. Wood County Sheriff's Dep't*, No. 3:07-cv-0397, 2008 WL 4449450, at *10 (N.D. Ohio Sept. 30, 2008) (citing *Fabrey v. McDonald Village Police Dep't*, 70 Ohio St. 3d 351, 356, 639 N.E.2d 31, 35 (1994) (citing *Hawkins v. Ivy*, 50 Ohio St. 2d 114, 116-18, 363 N.E.2d 367, 368-69 (1977)).

## Conclusion

For the foregoing reasons, I recommend that the petition of Kathy Frasure for a writ of habeas corpus be denied.

Dated:   July 7, 2010                                     s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[119]

---

[119] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-21-